# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| DAVID NUNES, | 1:09-cv-00645-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"). 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 2, 9.) On April 7, 2010 the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1945, has a high school education, and previously worked as a forklift operator and truck mechanic. (Administrative Record ("AR") 22, 138, 549-50, 552-54.) On November 4, 2004, Plaintiff filed an application for DIB, alleging disability beginning October 1, 1999, due to low back pain, bilateral hearing loss, leg pain, bilateral shoulder pain, bilateral foot pain, and obesity. (AR 13, 16, 94-95.)[2] Plaintiff contends that his disability precludes his performance of even sedentary work.

Between approximately 1998 to 2006, Plaintiff underwent various examinations at Department of Veterans Affairs ("VA") facilities. (AR 119-27, 138-356, 472-81.) On March 19, 1998, a VA medical examiner found Plaintiff had no mental impairments, and diagnosed Plaintiff with chronic pain, hypertension, a history of malaria, asymptomatic since 1967, a hiatal hernia, lower back pain post lumbar laminectomy, status post left and right shoulder fractures secondary to injuries while riding a horse, and lipomas in the left and right chest wall.

On May 4, 1999, the VA determined that Plaintiff was disabled and unemployable due to Plaintiff's physical limitations, age, education, and occupational background and training and was entitled to non-service connected disability pension effective November 24, 1997. (AR 119-21.)

On September 3, 2003, a VA medical examiner diagnosed Plaintiff with Post-Traumatic Stress Disorder ("PTSD"), but noted that, although the PTSD diagnosis conformed with the DSM-IV, the condition "does not seem impairing at this particular time from an emotional or mental point of view." (AR 321-32.)

On October 29, 2003, Plaintiff was evaluated by clinical psychologist Dr. James P. Murphy. (AR 381-84.) Dr. Murphy opined that Plaintiff was suffering from PTSD, but found that he was able to verbalize his thoughts, was considered to be within normal expectations, demonstrated orientation

---

[2] Plaintiff's insured status expired on December 31, 1999. To be entitled to DIB, a claimant "must establish that [his] disability existed on or before" the date his insured status expired. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). As Plaintiff contends that his disability began on October 1, 1999, Plaintiff must establish that he was disabled between October 1, 1999, and December 31, 1999, to be entitled to DIB. This is the relevant time period for purposes of Plaintiff's claim for benefits.

2

to all three spheres, appeared to have good social judgment, and understood the circumstances surrounding his problems that prompted him to seek treatment. (AR 383.) However, the examination only described Plaintiff's symptoms at the time of the examination, not the existence or level of severity of symptoms during the relevant time period from October 1, 1999, to December 31, 1999.

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 46-62.) Subsequently, three administrative hearings were held in this matter. On November 21, 2006, ALJ David Flierl held a hearing where Plaintiff testified that he has trouble reading and writing, despite completing high school. (AR 519-41.) The ALJ noted that Plaintiff was awarded VA disability benefits effective from November 1997. (AR 533.) At the conclusion of the hearing, the ALJ held the record open so that it could be supplemented with additional VA records Plaintiff's counsel could acquire. (AR 540.)

On June 19, 2007, at the request of ALJ Flierl, Dr. Judith Willis reviewed Plaintiff's medical records and provided a retrospective opinion as to Plaintiff's physical limitations from October 1, 1999, through December 31, 1999. (AR 482.) Dr. Willis noted the lack of medical assessments during that time period, but she found that there were records from a few months before and a year following the relevant period that provided the foundation for her opinion. *Id.* Dr. Willis found that, from October 1999 through December 1999, Plaintiff could not frequently lift or carry more than 25 pounds or walk or stand longer than two hours without a ten-minute sitting break. *Id.* However, she determined that Plaintiff could take breaks and work over an eight-hour day. Dr. Willis also found that Plaintiff's condition at that time required that he avoid the following: (1) frequent use of foot pedals; (2) frequent, sustained overhead reaching with both arms; or (3) frequent bending, stooping, crouching, and crawling. *Id.*

After acquiring additional records, including Dr. Willis' retrospective medical opinion, a supplemental hearing was held on October 24, 2007, before ALJ Flierl. (AR 542-72). Plaintiff testified that in his past relevant work he would regularly lift between 20 and 50 pounds. (AR 554.)

3

Plaintiff also testified that, up to December 31, 1999, he could lift 20 pounds for two or three hours in an eight-hour work day; could stand 30 to 40 minutes before needing to sit down; in total, he could sit approximately three hours and could stand and walk for approximately three hours of an eight-hour work day. (AR 559-60.) Plaintiff testified that he was also having trouble stooping and bending at that time and that bending to put on shoes and socks was difficult. (AR 561.) Plaintiff stated that during the relevant time period he played nine holes of golf three to four times a week, so long as a cart was available. (AR 565.)

A vocational expert ("VE") also testified that Plaintiff's past work as a forklift driver was medium[3] and semi-skilled. (AR 556.) According to the VE, a hypothetical person with the same residual functional capacity ("RFC") and limitations as Plaintiff would be unable to perform Plaintiff's past relevant work.

On January 3, 2008, ALJ Flierl issued a decision, finding Plaintiff not disabled through December 31, 1999, the last date of his insured status. (AR 496-506). Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 513-15.) The Appeals Council remanded the matter, determining that the ALJ erred by not adequately considering the May 4, 1999, VA disability determination, by failing to consider Plaintiff's obesity, and by failing to assess the credibility of lay statements in support of Plaintiff's claim. (AR 508-10.)

On October 28, 2009, Plaintiff appeared for another hearing before ALJ Bert C. Hoffman. (AR 573-612.) Plaintiff testified again as to his education, ability to read, write, perform math, work experience, and physical limitations. (AR 577-87.) He provided testimony as to the nature and extent of his daily activities that included trips to play golf, ranching, cattle-rustling, socializing with friends, hunting, and road trips to Oregon and Washington. (AR 587-601.)

A VE testified that a hypothetical person with Plaintiff's age, education, work experience, and RFC would be able to perform cashier work, assembler jobs, and meat and poultry cutter work and that these jobs exist in the national economy in significant numbers. (AR 23, 605-11.)

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

On November 25, 2008, ALJ Hoffman issued a decision, finding Plaintiff not disabled through December 31, 1999. (AR 13-24.) Specifically, the ALJ found that during the period from his alleged onset date of October 1, 1999, through December 31, 1999, the date he was last insured: (1) Plaintiff had not engaged in substantial gainful activity; (2) Plaintiff had an impairment or a combination of impairments that are considered "severe" based on the requirements in the Code of Federal Regulations; (3) Plaintiff did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) Plaintiff was unable to perform his past relevant work as a forklift operator and truck mechanic, but other work that Plaintiff could have performed existed in significant numbers in the national economy. (AR 18-22.)

Plaintiff sought review of this decision before the Appeals Council. On February 25, 2009, the Appeals Council denied review. (AR 6-8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On April 10, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's November 2008 decision. Plaintiff argues that: (1) the ALJ failed to give appropriate weight to the VA's decision finding Plaintiff disabled and unemployable; and (2) the ALJ failed to properly evaluate Plaintiff's credibility.[4]

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell*, 161 F.3d at 601. In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the

---

[4] Plaintiff also argued in his opening brief that the ALJ committed reversible error by relying on the VE's testimony without inquiring whether it conflicted with the Dictionary of Occupational Titles. Plaintiff's Brief ("Br.") at 15-16. However, Plaintiff withdrew this argument in his reply brief stating that the ALJ's error in failing to ask the VE about the DOT is harmless and explicitly stating that he "withdraws his allegation." Reply Br. at 2-3.

5

record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the

claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ Properly Considered the VA's Disability Determination.**

Plaintiff argues that the VA found him to be disabled and precluded from employment as of November 24, 1997, due to non-service connected conditions. (*See* AR 119-21.) Plaintiff asserts that the ALJ failed to provide persuasive, specific, and valid reasons for giving less weight to this VA disability rating. (Plaintiff's Br. at 11-13.) Defendant maintains that the ALJ offered several specific reasons for rejecting the VA's disability determination, and his decision was not in error. (Defendant's Br. at 6-7.)

While a VA disability rating does not compel the Social Security Administration to reach an identical result, an ALJ "must ordinarily give great weight to a VA determination of disability" because of the similarities of the two federal programs. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504. The ALJ may give less weight to a VA disability rating only if he "gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

In a decision awarding non-service-connected disability pension on May 4, 1999, the VA Los Angeles Regional Office ("RO") found that Plaintiff was precluded from "manual labor" due to his hypertension, degenerative joint disease in his L3-S1, with lower back pain, a hiatal hernia, a bilateral, significantly disabling shoulder condition, and a bilateral foot condition. (AR 119.) The

RO considered Plaintiff's age, education, and occupation background and determined that these factors disqualified him from all gainful employment other than manual labor. (AR 119.) Therefore, the RO concluded that Plaintiff was effectively precluded from all employment. *Id*.

Here, the ALJ provided specific and valid reasons for not adopting or giving the VA disability determination dispositive weight. The ALJ expressly disagreed with the VA's finding that Plaintiff was essentially precluded from all gainful employment. The ALJ found that Plaintiff was able to perform some types of work and based his determination on the testimony of the VE – expert testimony that was not available to the VA in making its disability determination. (AR 21.) The VE testified that, given Plaintiff's age, education, work experience, and RFC, he would have been able to perform a number of jobs, such as cashier, assembler, meat/poultry cutter, and agriculture worker. (AR 23.)

Further, the VA's determination that Plaintiff was precluded from employment was based on a finding that Plaintiff's basic reading, writing, and math skills were limited and disqualified him from employment other than unskilled, manual labor. (AR 21, 119.) The ALJ specifically disagreed with this assessment based on evidence in the record that Plaintiff worked as a forklift operator, which, pursuant to the VE testimony, is a semi-skilled position. (AR 21.) Plaintiff was able to do this in spite of his reading difficulties, which have existed since childhood. *Id.* The ALJ found that this weighed against the VA's determination that since Plaintiff could perform no manual, unskilled labor, he was precluded from all employment. *Id.*

The ALJ also explained his disagreement with the VA's determination that Plaintiff's physical impairments prevent him from participating in all types of manual labor. Plaintiff's testimony regarding his daily activities of playing golf and running cattle was not considered by the VA adjudicator, and the ALJ found that this testimony undercut the VA's finding that Plaintiff was entirely precluded from manual labor of any type. (AR 21.)

After reviewing the ALJ's decision, this Court finds that the ALJ properly addressed the VA's disability determination. The ALJ gave several persuasive, valid, and specific reasons for not giving the VA disability determination great weight including: (1) the fact that the VA did not have the benefit of VE testimony that someone with Plaintiff's RFC was able to perform work in the national

and regional economy, (2) Plaintiff's work history and VE testimony supported the fact that Plaintiff's level of education, skill, and training did not preclude him from at least some types of semi-skilled work, and (3) Plaintiff's testimony regarding his daily activities, which VA did not consider, contradicted the VA's finding that Plaintiff was precluded from all types of "manual labor." Therefore, the ALJ's decision conforms to the requirements of *McCartey* in weighing the May 4, 1999, VA disability determination.

**B.     The ALJ Provided Specific, Clear, and Convincing Reasons for Finding Plaintiff Not Fully Credible.**

   **1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, intensity, or other symptoms of a condition, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Evidence of a claimant's daily activities may be relevant to evaluating the credibility of a claimant's pain testimony. A claimant is not required to be completely

incapacitated to qualify for disability benefits; however, daily home activities are relevant evidence to consider in a credibility analysis where such activities are transferable to the workplace. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

**2.    Analysis**

The ALJ found that Plaintiff's allegations and statements about his symptoms and limitations in existence from October 1, 1999, through December 31, 1999, were not fully credible and gave them little evidentiary weight. (AR 21.) Plaintiff argues that the ALJ's reasons for finding him "not fully credible" are not clear and convincing. (Plaintiff's Br. at 14-15.) Defendant argues that the ALJ properly considered Plaintiff's daily activities, treatment history, objective test results, and his physical examinations in finding that Plaintiff's subjective complaints were not entirely credible. (Defendant's Br. at 8-9.)

The ALJ provided specific, clear, and convincing reasons to find Plaintiff's testimony not fully credible. First, the ALJ found Plaintiff not fully credible because his claims of severe limitations are inconsistent with his level of physical daily activity. For example, Plaintiff claims to have disabling shoulder, back, leg, and foot problems. (AR 19.) However, Plaintiff regularly played golf before and after the period of October 1, 1999, to December 31, 1999. Shortly after December 31, 1999, Plaintiff played nine holes of golf three to four times per week. (AR 20, 164.) The ALJ found that Plaintiff's ability to play golf is inconsistent with disabling shoulder, back, leg, and knee pain. (AR 19, 20.)

Further, Plaintiff testified that he "ran cattle" with a friend a couple of days per week; in other words, Plaintiff went on horseback or in a truck and helped move cows and calves from pasture to pasture. (AR 19, 588-90.) The ALJ found this activity to be inconsistent with disabling pain. (AR 19.) On September 3, 2003, Plaintiff reported to a VA examiner that he was making a 140 mile round trip five days per week to visit his friends. (AR 20, 325.) The ALJ found that these trips show Plaintiff was capable of prolonged sitting and operating foot controls. (AR 20.)

Plaintiff testified that since 1999 he had taken road trips to Oregon and Washington through Yellowstone (AR 20, 599), and he currently participates in hunting activities (AR 20, 599-601). However, Plaintiff also testified that his condition has actually worsened since 1999. (AR 20, 601.)

The ALJ found that, given Plaintiff's current activity level, Plaintiff would have been able to be even more active in 1999, which again conflicts with Plaintiff's testimony about his limitations and symptomatology in 1999, which he stated continued to worsen with time. (AR 20.)

Second, the ALJ also found that Plaintiff was not fully credible because of inconsistencies between Plaintiff's testimony about his limitations during the relevant time and statements he made to medical personnel around that time period. (AR 20.) During a medical exam in March 1998, Plaintiff denied weakness in his lower extremities. (AR 18, 474.) On April 13, 1999, Plaintiff complained of shoulder pain, but admitted that the pain was controlled with ibuprofen. (AR 20, 187-88.) He was noted to have a fair range of motion in his shoulder without crepitus, warmth, or swelling. (AR 20, 187-88.) In July 1999, Plaintiff reported that over-the-counter potassium improved his leg cramps. (AR 20, 182.) *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (evidence of "conservative treatment," such as claimant's use of any over-the-counter pain mediation, is sufficient to discount a claimant's testimony regarding severity of an impairment). In April 2000, although Plaintiff reported leg pain with cramps after walking two or three city blocks for which exercise was prescribed, by August 2000, he reported that he was walking about eight city blocks every day. (AR 20, 166.) On April 21, 2001, Plaintiff reported that his right leg pain had gone away after he started using arch supports. (AR 20, 155.) The ALJ found that these medical reports do not reflect the type of disabling pain and limitation that Plaintiff now states he experienced in 1999.

Third, the ALJ found that Plaintiff's reported limitations and symptoms were inconsistent from testimony he provided at prior hearings. (AR 20.) For example, at the hearing held in October 2007, Plaintiff alleged that during the relevant time period in 1999 he could stand, walk, or sit no more than approximately three hours over an eight-hour work day. (AR 559-60.) At the October 2008 hearing, Plaintiff reported that he could stand with breaks for a total of six hours in an eight-hour day, and could sit, with breaks, for a total of six or seven hours out of an eight-hour work day. (AR 20, 584-85.)

In conclusion, the ALJ offered specific and clear and convincing reasons for finding Plaintiff "not fully credible," identifying the evidence of record, including daily activities, treatment records, and inconsistent former testimony that undermine the Plaintiff's reported limitations and

symptomatology. Therefore, the ALJ's credibility determination is supported with findings sufficiently specific and clear and convincing for the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony. *Tommasetti*, 533 F.3d at 1039.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff DAVID NUNES.

IT IS SO ORDERED.

**Dated:    September 15, 2010                 /s/ Sheila K. Oberto**
                                                                    UNITED STATES MAGISTRATE JUDGE